# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
**FILED**

*August 06, 2025*

Nathan Ochsner, Clerk of Court

United States of America
v.
JORDAN THUONGSON TRAN

*Defendant(s)*

Case No. **4:25-mj-469**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of August 5, 2025 in the county of Harris in the Southern District of Texas, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. § 846 | Conspiracy to Possess with Intent to Deliver a Controlled Substance |
| Title 21, U.S.C. § 841(a)(1) | Possession with Intent to Deliver a Controlled Substance |

This criminal complaint is based on these facts:

see attached.

☒ Continued on the attached sheet.

*Complainant's signature*

HSI Special Agent Sabas Torres
*Printed name and title*

Sworn to by telephone.

Date: August 06, 2025

*Judge's signature*

City and state: Houston, Texas

Yvonne Y. Ho, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § CASE NO. **4:25-mj-469** |
| | § |
| VS. | § |
| | § |
| JORDAN THUONGSON TRAN | § |
| | § |
| | § |

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINT**

I, Sabas Torres, a Special Agent with the Homeland Security Investigations (HSI) being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the United States Department of Homeland Security, Homeland Security Investigations (HSI), Office of the Special Agent in Charge Houston, Texas. I have been employed as a Special Agent with HSI since November 2009. Prior to 2009, I was employed by ICE as an Immigration Enforcement Agent for approximately three years. I have received specialized training and have experience with investigative techniques for the purposes of monitoring, infiltrating and interdicting criminal organizations and their members. In connection with my duties and responsibilities, I have been involved in numerous investigations of individuals and/or criminal organizations that derive substantial income from the importation, manufacture, distribution and sale of controlled substances.

2. Throughout my employment with HSI, I have received extensive training pertaining to controlled-substances investigations and the investigations of various crimes that arise from illegal-drug trafficking activities. In that capacity, I have controlled and interviewed informants and I have conducted numerous searches, interviews, and physical and electronic

surveillances regarding drug traffickers. I have participated in several wire investigations, two of which I was affiant and case agent. I have monitored and reviewed summaries of intercepted conversations between drug traffickers. I have monitored and overheard calls and meetings between informants or undercover agents and drug traffickers. I have also worked and consulted with numerous law enforcement officers experienced in drug trafficking. As a result of all of this, I am familiar with how drug traffickers speak to each other and generally conduct business. For example, I am aware that drug traffickers discussing criminal matters over the phone often speak vaguely or in code, and I am aware of some common codes or methods of coding used by the traffickers.

3. Based on my training, experience, discussions with other law enforcement agents, and my participation in other investigations involving quantities of controlled substances, including fentanyl, heroin, methamphetamine, cocaine, and other controlled substances, I am aware of and familiar with the methods and means that illegal-drug traffickers commonly used to facilitate the manufacture, import, smuggling, and distribution of controlled substances. For example, I know the following based on my training and experience:

    a. Transnational drug trafficking organizations include producers and manufacturers of controlled substances, active pharmaceutical ingredients, excipients, and illegal-drug making equipment that are based in the United States, Mexico, and China.

    b. Transnational drug trafficking organizations use business-type partnerships and formal organizational structures to source and supply chemicals, precursors, controlled substances, and illegal-drug making equipment. These formal structures allow the organizations to source and supply these substances at a greater scale and

efficiency and provide an air of legitimacy that helps conceal these organizations' illegal activities.

c. Transnational drug trafficking organizations have trended towards the manufacture and distribution of counterfeit prescription pain, anxiety, and attention-deficit medications; however, these organizations commonly replace the active pharmaceutical ingredients of these substances with much cheaper and stronger synthetic opioids, such as fentanyl and fentanyl analogues, or methamphetamine. These counterfeit prescription medications are in high demand with U.S. consumers due to their perceived safety and familiarity and have proven very profitable to transnational drug traffickers due to their relatively cheap cost of production and distribution compared to other traditional controlled substances.

d. Transnational drug trafficking organizations in the United States and Mexico rely in substantial part on the supply of cheaply produced controlled substances such as fentanyl and fentanyl analogues, and counterfeit, misbranded, and adulterated active pharmaceutical ingredients by chemical and drug manufacturers based in China. These drug trafficking organizations also rely on the supply of cheaply produced illegal-drug making equipment, including tablet-press machines and pill binder (which are described in detail further below), by China-based manufacturers.

e. These China-based manufacturers produce, market, and distribute these substances and equipment at low costs to United States and Mexico-based drug-trafficking organizations, and frequently advertise and sell these substances through internet-based websites. These China-based manufacturers can operate formally and openly

      in China and through online services because China generally does not honor United States-based extradition requests.

    f. Transnational drug trafficking organizations, including the illegal substance and equipment producers based in China, frequently conceal their illegal activities from United States-based law enforcement by using business names and online services and websites to market illegal substances and equipment to United States buyers; mislabeling or mis-manifesting United States-bound packages containing illegal substances or equipment; forming agreements with United States-based warehousing and logistics companies to re-label and thereby anonymize the source of the packages prior to interstate distribution; accepting payment through cryptocurrency, money orders, and wire transfers which produce fewer records than traditional banks; and communicating through mobile applications on cellular phones such as the end-to-end encrypted messaging services WhatsApp, Wickr, and Telegram to conceal their identities when communicating about the purchase and distribution of illegal substances and equipment.

    g. Transnational drug trafficking organizations commonly provide false statements in United States Customs and Border Protection forms and provide false names on their postage labels to conceal their identities from law enforcement when using United States mail and delivery services

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not set forth all of my knowledge about this matter.

5. For the reasons stated below, I submit that there is probable cause to believe that Jordan Thuongson TRAN, hereinafter referred to as J. TRAN, has violated Title 21 U.S.C. §§ 841(a)(1) – Possession with Intent to Deliver a Controlled Substance, to wit: fentanyl, cocaine, methamphetamine, and MDMA; and Title 21, U.S.C. 846-Conspiracy to Possess with Intent to Deliver a Controlled Substance, to wit: fentanyl, cocaine, methamphetamine, and MDMA.

## PROBABLE CAUSE

6. The United States Homeland Security Investigation (HSI) Special Agents have identified J. TRAN, as a narcotics source of supply in the Houston, Texas area who is involved with others, known and unknown, in the operation of a clandestine pill-press lab that is used to manufacture multi-kilogram amounts of tablets laced with fentanyl, cocaine, methamphetamine, MDMA and other narcotics. The investigation has revealed that **J. TRAN** and others, known and unknown, transport and sell these narcotics to various others in and around Houston, Texas and other places.

7. On July 29, 2025, HSI Special Agents retrieved abandoned items from the waste receptacle located outside the residence located at 1203 Cedarpost Tree Spring Place, Houston, Texas 77055, (hereinafter **TARGET LOCATION**). In examining the items, agents recovered several plastic bags and wrappings, some of which contained pink, green, blue and orange powdery residue. Also recovered were wrappings known by your affiant to be commonly used to package controlled substances. A presumptive field-test of the bags resulted in a presumptive positive for the presence of MDMA and methamphetamine.

8. On August 1, 2025, a search warrant was signed by United States Magistrate Judge Richard Bennett authorizing the search of the TARGET LOCATION.

9. On August 5, 2025, HSI agents, with support of TXDPS Criminal Investigators and Houston Police Department Officers, executed the search warrant at the **TARGET LOCATION** where agents encountered J. TRAN. During the course of the execution of the search warrant, agents discovered that the residence was being used as a clandestine pill-press lab which included the presence of a large automatic pill-press. Seized in the search of the residence were two large bowls which contained green and blue powder. A field test conducted on these powders resulted in a presumptive positive for the presence of fentanyl. The gross weight of the substances in the two bowls combined was determined to be 1.37 kilograms. Additionally, thousands of counterfeit tablets that field-tested positive for methamphetamine and other tablets that field-tested positive for MDMA, approximately 50 kilograms of a powdery substance that field-tested positive for methamphetamine, approximately half a kilogram of a white powdery substance, in brick form, that field-tested positive for cocaine, one handgun, cellular phones and other electronic devices were seized in the search of the **TARGET LOCATION**.

10. J. TRAN was arrested for violation of Title 21 U.S.C. §§ 841(a)(1) – Possession with Intent to Deliver a Controlled Substance, to wit: fentanyl, cocaine, methamphetamine, and MDMA; and Title 21, U.S.C. 846-Conspiracy to Possess with Intent to Deliver a Controlled Substance, to wit: fentanyl, cocaine, methamphetamine, and MDMA.

11. Post Miranda, J. TRAN admitted knowledge of narcotics and stated he was responsible for the everyday operation of the clandestine pill-press lab, which consisted of mixing the chemicals and bonding agents, running the rotary-type pill press machine and fulfilling the orders placed by other drug dealers and customers. J. TRAN stated that the clandestine pill-press lab had been operating since approximately March 2025.

## CONCLUSION

12. Based on these facts, I believe probable cause exists for the issuance of a complaint and arrest warrant for Jordan Thuongson TRAN for violations of Title 21 U.S.C. §§ 841(a)(1) – Possession with Intent to Deliver a Controlled Substance, to wit: fentanyl, cocaine, methamphetamine, and MDMA; and Title 21, U.S.C. 846 - Conspiracy to Possess with Intent to Deliver a Controlled Substance, to wit: fentanyl, cocaine, methamphetamine, and MDMA.

_____
Sabas Torres
Special Agent, HSI


The foregoing affidavit was sworn to telephonically on this 6th day of August 2025 and I find probable cause.

_____
YVONNE Y. HO
U. S. Magistrate Judge